UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**Hon. Hugh B. Scott**

v.

10CR16S

**Report
&
Recommendation**

JOSEPH HUGHES,

Defendant.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 6).  The instant matter before the Court is defendant's omnibus motion, pertinent to this Report & Recommendation, seeking to suppress physical evidence and dismiss the Indictment (Docket No. 9, Def. Atty. Affirm. ¶¶ 64-75; Docket No. 23).  This omnibus motion also sought various forms of discovery and disclosure relief, which will be considered in a separate Order (Docket No. 29).

BACKGROUND

Defendant initially was charged with conspiracy (with unnamed others) to possess with intent to distribute and distribution of five kilograms or more of a substance containing cocaine, from an unknown date until on or about September 10, 2009, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Docket No. 1, Indict., Count 1).  He was also charged with conspiracy (again with unnamed others) to commit an offense against the United States, that is, conducting or attempting to conduct a financial transaction affecting interstate commerce, that is

transferring money which involved the proceeds of unlawful activity (the distribution of controlled substances), conducted during the same time period, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (h) (id., Count 2).  Count 3 alleged that defendant, between September 8 and 10, 2009, knowingly conducted or attempted to conduct a financial transaction affecting interstate commerce, that is transferring, delivering, and disposing of $297,000 (the proceeds of unlawful distribution of controlled substances), in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (id., Count 3).

This Indictment was superseded, repeating the first three counts of the Indictment and adding two new counts (Docket No. 21, Superseding Indict.).  Count 4 now alleges that, on or about June 25, 2010, defendant possessed with intent to distribute a mixture containing cocaine base (id., Count 4).  Count 5 alleges that, on or about July 6, 2010, defendant also possessed a mixture containing cocaine with the intent to distribute (id., Count 5).  These latter two counts were in violation of 21 U.S.C. § 841(a)(1) (id., Counts 4, 5).

Defendant filed his omnibus motion (Docket No. 9) to which the Government responded (Docket No. 11).  The Government there cross moved for reciprocal discovery (Docket No. 11, Gov't Response at 22-23).  On May 11, 2010, during proceedings in this case, defendant requested a suppression hearing and this Court ordered the parties to supplement their papers on that question (Docket No. 12).  After defendant filed his affirmation claiming a property interest in the rental car searched in this case (Docket No. 13), the Government filed a response consenting to a suppression hearing (Docket No. 14).  That hearing was held on September 20, 2010 (Docket Nos. 20 (minutes), 22 (transcript)).  After this hearing and arraignment on the Superseding Indictment (see text minute entry Nov. 22, 2010), the Court allowed post-hearing

2

briefing, ultimately to be completed by May 10, 2011 (Docket Nos. 27, 25; text minute entry

Nov. 30, 2010).  Defendant filed a new omnibus motion (Docket No. 23) under the Superseding

Indictment seeking inspection of the Grand Jury minutes and dismissal of the Indictment (in

addition to the relief previously sought) (id. ¶¶ 4-5), and the Government responded (Docket

No. 24).  The Government renewed its cross motion for discovery (Docket No. 24, Gov't

Response at 19-20).  The Government then submitted its post-suppression hearing memorandum

of law (Docket No. 28).

*Suppression Hearing*

A suppression hearing was conducted regarding a vehicle stop in Arizona on

September 10, 2009, where this vehicle, driven by defendant was searched (Docket No. 22,

Sept. 20, 2010, Tr. at 2).  The Government called Deputy Sheriff Albert Clark, of the Apache

County (Arizona) Sheriff's Department (id. at 3) and Christopher Oaks[1] of the Apache County

Drug Task Force (id. at 38).  Defendant did not testify or call any witnesses (see id. at 71).

Deputy Clark was assigned to the drug enforcement unit of the Apache County[2] Sheriff's

Department, performing highway criminal interdiction, mainly on Interstate Route 40 (Docket

No. 22, Tr. at 3-4).  Clark testified from his years of experience in the Sheriff's Department and

in the Navajo Police Department that Interstate 40 is used for smuggling narcotics (id. at 4-5).

He noticed a blue Ford Fusion heading westbound driving too close to a tractor trailer (id. at 6).

When the Ford Fusion passed the tractor trailer, Detective Oaks activated his emergency lights

---

[1]Or "Oakes" as noted by the Government, see Docket No. 28, Gov't Post-Hearing Memo. at 1.

[2]Apache County is on the northern and eastern borders of Arizona.

and stopped the Ford (id. at 8).  Clark then approached the passenger's side of the vehicle and the

driver rolled down the front passenger window (id.).  Clark identified the driver as being the

defendant (id. at 8-9).

Defendant appeared to be "very nervous" to Clark and the defendant was "acting very

nervous" (id. at 9).  Clark observed fast food wrappers, snacks, energy drinks, and a cell phone

inside the vehicle and saw an old shirt hanging up in the left rear window and Clark smelled the

odor of cologne coming from the car (id. at 10), which he later testified collectively were

indicators of criminal activity (id. at 33).  Defendant explained that he rented the car in Buffalo,

New York, after visiting a relative there and was driving to Las Vegas, Nevada, to visit his

grandfather, but he did not know his grandfather's address or telephone number (id. at 12-13).

While Clark was talking with defendant, Oaks and his K-9 were conducting an "external sniff" of

the vehicle (id. at 13, 54-55 (Oaks testimony)).  Defendant became nervous as he watched Oaks

and his dog circle the car (id. at 13-14).

After Clark gave defendant a warning citation and returned his paperwork, Oaks indicated

that the dog had alerted on the vehicle (id. at 15).  Clark then asked defendant if he had any

illegal contraband, then giving him a list of examples of contraband; defendant looked Clark in

the eye and shook his head "no" to most items.  Defendant then broke eye contact when he was

asked if he had U.S. currency, looking down on the ground and taking a deep breath, he denied

that he had any.  (Id.)  Clark then patted down defendant and had him stand by a fence while

Oaks searched the car and Clark watched defendant (id. at 15-16).  When Oaks opened the trunk,

they saw three pieces of luggage, which were opened; one bag had clothing with a vacuum-sealed

package containing U.S. currency (id. at 16).  Oaks continued, searching a second bag and

finding seven more packages of U.S. currency (id.).  When asked about the currency, defendant denied knowing anything about it (id.).

Detective Christopher Oaks then testified; he is a member of the Apache County Drug Task Force and handler of K-9 "Red" (id. at 38-39).  After describing his training and that of Red (id. at 39-48), Oaks described his log in wherein he noted the stop of defendant's car and how Red alerted to the presence of narcotics and the discovery of almost $300,000 in currency (id. at 49).  Oaks had just observed defendant's car drive too close to a tractor trailer, a violation of Arizona traffic law (id. at 51-53).  Oaks and Clark initiated a traffic stop of defendant's car (id. at 53).  After defendant exited his vehicle with Clark, Oaks observed defendant acting nervously, by kicking rocks and otherwise "acting a little bit nervous" while Clark was filling out the warning. Oaks took Red out of his vehicle and had him begin to sniff the exterior of defendant's car.  (Id. at 54-55.)   Circling counterclockwise from the left front of defendant's car, Red arrived at the driver's side window, took some deep breaths and alerted to the presence of narcotics (id. at 55-56).  In going by and under the trunk of the car, Red did not alert (id. at 56).  After circling the vehicle counterclockwise, Oaks turned Red around and circled the car clockwise and, upon approaching the driver's side window again, Red again aggressively alerted (id. at 56).  Oaks then returned Red to the patrol car, advised Clark of the positive alert, and the officers then searched defendant's car (id. at 56-57).  Oaks searched the driver's side front door and he did not find any contraband there (id. at 57, 68).  He went to the trunk and unzipped one of the suitcases and found a large vacuum-sealed package of currency (id. at 57).  On cross-examination, Oaks stated that, in Arizona, consent of the owner is not required after a K-9 alert to have a vehicle searched (id. at 68).  Oaks also conceded that Red was not used to sniff the luggage before the

officers opened them and Red was not trained to sniff for currency (id. at 69).  On redirect

questioning, Oaks stated that the currency seized had an odor of marijuana (id. at 69-70).

Clark testified that it was about five minutes between his writing of the warning and Oaks

beginning to have Red sniff the car and Oaks testified that the entire traffic stop and inspection

took about five to ten minutes (id. at 13-14, 33, 59).

The Government argues that defendant's car was lawfully stopped for a violation of

Arizona traffic law (Docket No. 28, Gov't Post-Hearing Memo. at 6-8), regardless of the alleged

motive for the stop (id. at 8-11).

Defendant did not submit his proposed findings of fact and conclusions of law.

DISCUSSION

I.       Motion to Suppress

At issue here is the lawfulness of the stop of defendant's vehicle in Arizona and the

lawfulness of the subsequent search.  In Arizona v. Johnson, 555 U.S. ___, 129 S.Ct. 781, 784

(2009), the Supreme Court recently held that a warrantless Terry[3] like stop may occur pending

inquiry into a vehicular violation, where officers may frisk the occupants of the vehicle incident

to the traffic stop, see also Berkemer v. McCarty, 468 U.S. 420, 439 n.29 (1984).  Furthermore,

the "automobile exception" to the warrant requirement also authorizes the search of containers

found in the vehicle without a warrant provided the search is supported by probable cause, see

California v. Acevedo, 500 U.S. 565, 575 (1991); United States v. Ross, 456 U.S. 798 (1982).

---

[3]Terry v. Ohio, 392 U.S. 1 (1968).

Defendant cites New York State law authorities that the continued detention of defendant following the traffic stop violated his constitutional rights (Docket No. 9, Def. Atty. Affirm. ¶¶ 68-69, citing New York cases).

Here, defendant was seen by Clark and Oaks violating Arizona traffic law by following too close to the tractor trailer, see United States v. Torres, No. 04-10186, 2004 WL 2980295, at *1 (9th Cir. Dec. 22, 2004) (interpreting Ariz. Rev. Stat. § 28-730(A)) (Docket No. 28, Gov't Post-Hearing Memo. at 7).  This gave the officers the reason for stopping defendant to issue him a warning or violation citation.  During that relative brief (five to ten-minute) stop, defendant acted nervously providing the officers with reasonable suspicion to investigate further, including using the dog to sniff the vehicle to detect narcotics.  The narcotics-detention dog sniffing the exterior of the car during the traffic stop did not infringe upon defendant's expectations of privacy to violate his Fourth Amendment rights, Illinois v. Cabelles, 543 U.S. 405, 409 (2005) (id. at 7-8).

Defendant argues that the positive alert in the front driver's side of the vehicle did not authorize the officers to search the trunk of the car (Docket No. 9, Def. Atty. Affirm. ¶ 71), see United States v. Seals, 987 F.2d 1102 (5th Cir. 1993).  But the authority defendant cites does not support his position.  In Seals, the United States Court of Appeals for the Fifth Circuit upheld a conviction (and the denial of suppression) where a half hour after defendant's arrest, a canine was brought in to sniff the exterior of the defendant's car.  Not hitting on the exterior, the dog did smell something from the open driver's side window.  The officers entered the passenger compartment and the dog alerted to the ashtray where a crack pipe was found.  The officer then noticed modifications in the interior that placed a piece of plywood as a cover over the trunk;

7

moving the plywood cover the officer saw a rifle.  The officers then had the dog sniff the trunk,

alerting on a box in the trunk.  That box was opened and it contained cocaine.  <u>Seals</u>, <u>supra</u>,

987 F.2d at 1104-05.  The Fifth Circuit affirmed the conviction, finding that the dog sniffing in

the interior and alerting that there were drugs, was probable cause to search the passenger

compartment of the vehicle.  Once the crack pipe was found, there was probable cause to search

the entire vehicle, including the trunk and its contents, <u>id.</u> at 1107-08.  Even if this search

technically had defects, the court held that this evidence would have been detected in an

inventory search following the impound of the vehicle, <u>id.</u>  The Fifth Circuit discusses that there

may be a distinction between probable cause to search the entire vehicle and probable cause to

search a portion of the vehicle where contraband is believed to be found, <u>id.</u> at 1107 & n.8

(discussing <u>Ross</u>, <u>supra</u>, 456 U.S. at 824, 825).

       "The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a

cardinal principle that 'searches conducted outside the judicial process, without prior approval by

a judge or magistrate, are <u>per se</u> unreasonable under the Fourth Amendment–subject only to a

few specifically established and well-delineated exceptions,'" <u>Mincey v. Arizona</u>, 437 U.S. 385,

390 (1978) (quoting <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967)); <u>Ross</u>, <u>supra</u>, 456 U.S. at

825.  One of those established and well-delineated exceptions is the so-called "automobile

exception."

       As noted in <u>Ross</u>, <u>supra</u>, 456 U.S. at 825, "if probable cause justifies the search of a

lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that

may conceal the object of the search."  While the majority in <u>Ross</u> also stated that "probable

cause to believe that a container in a trunk of a taxi contains contraband or evidence does not

justify a search of the entire cab," id. at 824, the Court there was defining the scope of a

warrantless search "not by the nature of the container" but by "where there is probable cause to

believe that [contraband] may be found," id.  The majority in that case held that police officers

"may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a

warrant 'particularly describing the place to be searched,'" id. at 800; see also id. at 817-18, 804-

05 (discussing Carroll v. United States, 267 U.S. 132, 174 (1925), upholding search of roadster

including ripping open seat as within scope of search had a magistrate authorized it).  "The scope

of a warrantless search based on probable cause is no narrower–and no broader–than the scope of

a search authorized by a warrant supported by probable cause," id. at 823.  The Ross Court also

noted that "an individual's expectation of privacy in a vehicle and its contents may not survive if

probable cause is given to believe that the vehicle is transporting contraband," id.

Here, Red alerted on the vehicle, not on a particular location.  When he alerted on the

driver's side window, the officers had probable cause to search the entire vehicle, including the

containers "fortuitously" located therein, Ross, supra, 456 U.S. at 816; see Robbins v. California,

453 U.S. 420, 435 (1981).  Had a warrant been issued, it would have authorized not only the

search of the vehicle but all of its containers, including defendant's luggage.  Thus, defendant's

motion to suppress the evidence seized as a result of this stop and search (Docket Nos. 9, 23)

should be **denied**.

II.     Motion to Inspect Grand Jury Minutes and to Dismiss the Indictment

Defendant moves to inspect the Grand Jury minutes and moves to dismiss the

Superseding Indictment pursuant to provisions of New York Criminal Procedure Law (Docket

No. 23, Def. Atty. Affirm. ¶¶ 4-5).  The Government responded by noting that defendant was

9

using a text directed for state prosecutions and not applicable here (Docket No. 24, Gov't Response at 2).

Under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), this Court may authorize the disclosure of a Grand Jury matter at the request of the defense who shows that a ground may exist to dismiss the Indictment because of a matter that occurred before the Grand Jury. The Court may authorize this disclosure "at a time, in a manner, and subject to any other conditions that it directs," id. A defendant would have to show that he has a particularized need for disclosure that outweighs the Government's interest in maintaining Grand Jury secrecy, United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Defendant cites no basis under federal law for inspection of the Grand Jury minutes or for the conclusion that the Superseding Indictment should be dismissed. Defendant has not articulated any particularized need for the Grand Jury materials.

Thus, defendant's motion to dismiss the Superseding Indictment (Docket No. 23) should be **denied**.

CONCLUSION

Based upon the above, it is recommended that so much of defendant's omnibus motion (Docket Nos. 9, 23) seeking to suppress physical evidence be **denied**, and seeking to dismiss the Superseding Indictment (Docket No. 23; cf. Docket No. 21) be **denied**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS** to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Cr. P. 59(b) (2) (effective December 1, 2009) and W.D.N.Y. Local Criminal Rule 58.2(a) (3).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Criminal Rule 58.2(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be

supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

      SO ORDERED.

_/s/ Hugh B. Scott_
_____
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
      June 7, 2011